***********
The Full Commission has reviewed the prior Opinion and Award based upon the deposition testimony before Deputy Commissioner Stanback and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of Deputy Commissioner Stanback and enters the following Opinion and Award.
 *********** *Page 2 
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties in the Pre-Trial Agreement dated August 5, 2010, as:
 STIPULATIONS
1. The Employee is Darryl Brown.
2. The Employer is City of Burlington.
3. Compensation Claims Solutions is the Servicing Agent for the City of Burlington.
4. The employee/employer relationship existed from May 1, 1996 until January 18, 2002.
5. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and the subject matter.
6. This cause is subject to the North Carolina Workers' Compensation Act.
7. This matter is a consolidation of I.C. File Nos. 151364, 151055 and 207006. The Order for the Consolidation was entered on November 1, 2002.
8. Darryl Brown was injured by accident while in the scope and course of his employment on:
 a. January 25, 2000 by straining his neck while pushing snow with a front end loader, I.C. File No. 151364;
 b. August 7, 2000 by straining his neck again while entering employer van and hitting his head on a bracket, I.C. File No. 151055;
 c. December 14, 2001 by hurting his back when he fell out of a chair at his employer, I.C. File No. 207006; (Defendants do not stipulate to this event being a compensable injury) *Page 3 
9. Darryl Brown was an employee of the Defendant, City of Burlington on January 25, 2000.
10. The parties entered into a consent order which was approved by Deputy Commissioner Morgan Chapman on August 4, 2006 in which the parties stipulated the Plaintiff's average weekly wage to be $431.20 rendering a compensation rate of $287.48.
 *********** ISSUE
Did the Deputy Commissioner err in setting aside the consent order in this case entered into by the parties and approved by former Deputy Commissioner Morgan Chapman on August 4, 2006?
 ***********
Based upon all of the competent, credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff has been receiving workers' compensation checks from Defendants since the end of February 2002 in the amount of $287.48 per week.
2. Prior to July 1, 2004, the checks were issued by Key Risk, the City of Burlington's administrator at the time. Since July 1, 2004, the checks have been issued by the City of Burlington's current administrator, Compensation Claims Solutions (hereinafter "Defendant-Carrier").
3. Since 2002, Plaintiff received six checks that were more than 14 days late. *Page 4 
4. Defendant-Carrier issued a check in the amount of $172.88 dated August 17, 2010 to Plaintiff to pay a 10% penalty on the six late checks. Said late penalty was due and owing at the time it was paid to Plaintiff.
5. Aaron Noble, Human Resources Director for Defendant-Employer, signed three North Carolina Industrial Commission Form 60s, all dated May 2, 2006, indicating that Plaintiff's average weekly wage was $431.20.
6. Mr. Noble did not prepare the Form 60s or calculate the average weekly wage. Those actions were performed by Defendant-Carrier, who then forwarded the completed forms to Defendant-Employer for signature. In calculating Plaintiff's average weekly wage, Defendant-Carrier used information about Plaintiff's hourly pay rate provided by Defendant-Employer.
7. At the time he signed the Form 60s, Mr. Noble believed the correct method for calculating an average weekly wage was based on an employee's hourly rate of pay. This belief was shared by the other employees in Defendant-Employer's Human Resources Department.
8. Mr. Noble did not intentionally include an incorrect figure on the Form 60s.
9. Mr. Noble first became aware that Plaintiff questioned the accuracy of the average weekly wage contained on the Form 60s six or seven months prior to his deposition on August 5, 2010.
10. On August 4, 2006, former Deputy Commissioner Morgan Chapman approved a consent order in this matter. The consent order was signed by counsel for Plaintiff and then counsel for Defendant-Employer, Manning Connors. Plaintiff's average weekly wage contained in the consent order was $431.20. *Page 5 
11. The Full Commission finds, based upon a preponderance of evidence in view of the entire record, that the consent order approved by former Deputy Commissioner Morgan Chapman was not entered into on the basis of fraud, misrepresentation or undue influence.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. There have been six occasions when Plaintiff has not received his temporary total disability compensation installments within 14 days after they became due as prescribed by N.C. Gen. Stat. § 97-18(g). Plaintiff is entitled to a 10% penalty on each installment of compensation not paid within 14 days after it became due pursuant to N.C. Gen. Stat. § 97-18(g). Said penalty has been paid by Defendants.
2. N.C. Gen. Stat. § 97-17 provides:
 No party to any agreement for compensation approved by the Commission shall deny the truth of the matters contained in the settlement agreement, unless the party is able to show to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or mutual mistake, in which event the Commission may set aside the agreement.
 Id.
3. In this case, the parties executed a consent order in which it was stipulated that Plaintiff's average weekly wage was $431.20. Defendant-Carrier arrived at that figure using Plaintiff's hourly pay rate as provided by Defendant-Employer. In so calculating Plaintiff's average weekly wage, Defendants failed to properly apply the statutory definition of "average weekly wage." N.C. Gen. Stat. § 97-2(5). *Page 6 
4. The Commission may set aside an agreement if it appears that the agreement was entered into under a mutual mistake of fact.Swain v. C N Evans Trucking Co.,126 N.C. App. 332, 484 S.E. 2d 845 (1997). A mutual mistake of fact must be common to both parties and must have caused each party to do what neither intended. Id. A mistake of law, however, does not ordinarily affect the validity of an agreement unless accompanied by fraud, undue influence or abuse of a confidential relationship.Foster v. Carolina Marble and Tile Co.,132 N.C. App. 505, 513 S.E.2d 75 (1999); Swain v. C N EvansTrucking Co., 126 N.C. App. 332, 484 S.E. 2d 845 (1997). The computation of Plaintiff's average weekly wage involves application of the definition set forth in N.C. Gen. Stat. § 97-2(5) and the case law construing that statute and therefore raises an issue of law, not fact. Swain v. C N Evans Trucking Co.,126 N.C. App. 332, 484 S.E. 2d 845 (1997).
5. The consent order in this matter sets out an incorrect average weekly wage, which was the result of a mutual mistake of law. Therefore, the consent order may not be set aside pursuant to N.C. Gen. Stat. § 97-17. Swain v. C N Evans TruckingCo., 126 N.C. App. 332, 484 S.E. 2d 845 (1997).
6. Furthermore, in the instant case, Plaintiff has failed to show that the consent order entered into by the parties was procured by fraud, misrepresentation or undue influence, and therefore, the consent order shall not be set aside on those grounds. N.C. Gen. Stat. § 97-17.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD *Page 7 
1. Plaintiff's request to set aside the consent order entered into by the parties and approved by Deputy Commissioner Morgan Chapman on August 4, 2006 is DENIED.
2. Defendants shall pay the costs.
This the ___ day of July, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1